IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BRIAN LITTON, Individually and For Others Similarly Situated, | § § § | CIVIL ACTION NO._____ |
| v. | § § | |
| | § | JURY TRIAL DEMANDED |
| PREFERRED ENGINEERING, L.P., and ANTHONY BRUCE CARROLL | § § | COLLECTIVE ACTION |

## ORIGINAL COMPLAINT

### SUMMARY

1. Preferred Engineering, L.P., and its owner Anthony Bruce Carroll (collectively, Preferred Engineering) failed to pay Brian Litton (Litton) and other workers like him, overtime as required by the Fair Labor Standards Act (FLSA).

2. Instead, Preferred Engineering paid Litton and other workers like him the same hourly rate for all hours worked, including those in excess of 40 in a workweek (or "straight time for overtime").

3. Worse, when Litton complained that he was owed overtime under the FLSA, Preferred Engineering retaliated against him by terminating his employment.

4. Litton brings this lawsuit to recover unpaid overtime wages and other damages owed under the FLSA, and to recover his lost wages, emotional distress damages, punitive damages and other damages under the FLSA's anti-retaliation provision.

### JURISDICTION AND VENUE

5. This Court has original subject matter jurisdiction under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b) because this suit involves a federal question under the FLSA.

6. Venue is proper in this Court under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this District and Division.

1

7. Preferred Engineering's headquarters are in Houston, Texas, in this District and Division.

## PARTIES

8. During the relevant period, Litton was an hourly employee of Preferred Engineering.

9. Throughout his employment with Preferred Engineering, Litton was paid the same hourly rate for all hours worked (including those hours in excess of 40 hours in a single workweek) with no overtime compensation.

10. His written consent is attached herein as <u>Exhibit A</u>.

11. Litton brings this action on behalf of himself and other similarly situated workers who were paid by Preferred Engineering's "straight time for overtime" scheme.

12. The class of similarly situated employees sought to be certified as a collective action under the FLSA is defined as:

> **All hourly employees of Preferred Engineering during the past 3 years who were paid straight time for overtime (the "Putative Class Members").**

13. Litton seeks conditional and final certification of this Putative Class in this collective action under 29 U.S.C. § 216(b).

14. Preferred Engineering, L.P. may be served with process by serving its registered agent, Anthony Bruce Carroll, 1322 Space Park Dr., B 216, Nassau Bay, Texas 77058.

15. Anthony Bruce Carroll may be served at the same address.

## COVERAGE UNDER THE FLSA

16. At all times hereinafter mentioned, Preferred Engineering was and is an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

17. At all times hereinafter mentioned, Anthony Bruce Carroll was and is an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d), because, among other reasons, he had operating control over Litton and the other Putative Class Members employed by Preferred Engineering. Carroll personally hired Litton and the other Putative Class Members, personally developed the illegal straight time for overtime scheme used by Preferred Engineering, and personally made the decision to fire Litton when he complained about the company's failure to comply with the FLSA.

18. Of course, because of "the clear and unambiguous language" of the FLSA, which contains the terms "any employee" and "any person" in its anti-retaliation provision, there is no requirement that Carroll "be engaged in activities covered by the Act's wage and hour provisions in order for the strictures against discriminatory discharge to be invoked." *Wirtz v. Ross Packaging Company*, 367 F.2d 549, 550–551 (5th Cir. 1966); *see also Acosta v. Foreclosure Connection, Inc.*, 903 F.3d 1132, 1135-36 (10th Cir. 2018) (collecting cases and holding that the anti-retaliation provisions of the FLSA apply to any person regardless of whether that person is an enterprise engaged in commerce); *Arias v. Raimondo*, 860 F.3d 1185, 1191-92 (9th Cir. 2017) (observing that "the difference in reach between FLSA's substantive economic provisions and its anti-retaliation provision is unmistakable" and that "Congress clearly means to extend section 215(a)(3)'s reach beyond actual employers"). Thus, it is irrelevant, for example, whether Carroll is an "employer" under the FLSA, or whether Preferred Engineering has more than $500,000 in annual sales. All that matters under the FLSA's anti-retaliation provision is that Carroll is a "person"—which he clearly is—and that he "discharge[d] or in any other manner discriminate[d] against any employee because such employee has filed any complaint. . . under or related to" the FLSA. *See* 29 U.S.C. 215(a)(3).

19. At all times hereinafter mentioned, Preferred Engineering was and is an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

20. At all times hereinafter mentioned, Preferred Engineering was and is an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated).

21. Preferred Engineering has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or were produced for commerce, such as hand tools, automobiles, computers, and cell phones.

22. At all times hereinafter mentioned, Litton and the Putative Class Members were engaged in commerce or in the production of goods for commerce under 29 U.S.C. §§ 206-207.

## FACTS

23. Preferred Engineering is a full service engineering and design firm providing service to the petrochemical industry.

24. In order to provide services to its clients, Preferred Engineering hires employees it pays on an hourly basis.

25. Litton worked for Preferred Engineering as a Construction Manager.

26. Litton was paid $88 an hour for every approved hour worked.

27. Litton was employed by Preferred Engineering from April 2014 to July 2020.

28. Litton was an hourly employee of Preferred Engineering.

29. Litton was not paid a guaranteed salary.

30. Litton reported the hours he worked to Preferred Engineering on a regular basis.

31. If Litton worked under 40 hours, he was only paid for the hours he worked.

32. But Litton would regularly work more than 40 hours in a week.

33. In fact, Litton routinely worked 60 or more hours a week.

34. The hours Litton worked are reflected in Preferred Engineering's payroll records.

35. Preferred Engineering paid Litton the same hourly rate for all hours worked, including those hours in excess of 40 hours in a single workweek.

36. Preferred Engineering did not pay Litton overtime for all hours worked in excess of 40 hours in a single workweek.

37. Rather than receiving time and half as required by the FLSA, Litton only received "straight time" pay for overtime hours worked.

38. This "straight time for overtime" payment scheme violates the FLSA.

39. Preferred Engineering was aware of the overtime requirements of the FLSA.

40. Preferred Engineering nonetheless failed to pay certain hourly employees, such as Litton, overtime.

41. Litton and the Putative Class Members are subjected to similar compensation practices.

42. Litton and the Putative Class Members also worked similar hours and were denied overtime because of the same illegal pay practice.

43. Litton and the Putative Class Members regularly worked in excess of 40 hours each week.

44. Preferred Engineering did not pay Litton and the Putative Class Members on a salary basis.

45. Preferred Engineering paid Litton and the Putative Class Members "straight time for overtime."

46. Preferred Engineering failed to pay Litton and the Putative Class Members overtime for hours worked in excess of 40 hours in a single workweek.

47. Preferred Engineering knew, or acted with reckless disregard for whether, Litton and the Putative Class Members were paid in accordance with the FLSA.

48. Preferred Engineering's failure to pay overtime to these hourly workers was, and is, a willful violation of the FLSA.

49. Litton complained through his counsel to Carroll that the failure to pay him overtime was a violation of the FLSA.

50. Within days of making his complaint to Carroll, Litton was fired and asked to return all company property by the company's human resources manager, Amy Condit.

51. When Litton asked why he was being fired, Condit told him to contact Carroll:



**COLLECTIVE ACTION ALLEGATIONS**

52. The illegal pay practices Preferred Engineering imposed on Litton were imposed on the Putative Class Members.

53. Numerous individuals were victimized by this pattern, practice, and policy which is in willful violation of the FLSA.

54. Numerous other individuals who worked with Litton were paid in the same manner, performed similar work, and were not properly compensated for all hours worked as required by federal wage laws.

55. Based on his experiences and tenure with Preferred Engineering, Litton is aware that Preferred Engineering's illegal practices were imposed on the Putative Class Members.

56. The Putative Class Members were not paid overtime when they worked more than 40 hours per week.

57. Preferred Engineering's failure to pay overtime at the rates required by federal law result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Putative Class Members.

58. Litton's experiences are therefore typical of the experiences of the Putative Class Members.

59. The specific job titles or precise job locations of the various members of the Putative Class Members do not prevent collective treatment.

60. Litton has no interests contrary to, or in conflict with, the Putative Class Members.

61. Like each Putative Class Member, Litton has an interest in obtaining the unpaid overtime wages owed under federal law.

62. The precise size and the identity of other Putative Class Members is ascertainable from the business records, tax records, and/or employee or personnel records maintained by Preferred Engineering.

63. The Putative Class Members are similarly situated because they were subjected to the same policy and practice as Litton. Defendant paid them on an hourly basis, and Defendant paid them "straight time" for each recorded overtime hour instead of the time-and-a-half rate required by the Fair Labor Standards Act.

64. The questions of law and fact common to each of Putative Class Members predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

   a. Whether Preferred Engineering required Litton and the Putative Class Members to work more than 40 hours during individual work weeks;

   b. Whether Preferred Engineering's decision to pay Litton and the Putative Class Members straight time for overtime was made in good faith;

   c. Whether Preferred Engineering paid Litton and the Putative Class Members on a salary basis;

   d. Whether Preferred Engineering failed to pay Litton and the Putative Class Members at a rate of one and one-half times their regular rate of pay when they worked more than 40 hours in a single workweek;

   e. Whether Preferred Engineering's violation of the FLSA was willful; and

   f. Whether Preferred Engineering's illegal pay practices were applied to Litton and the Putative Class Members.

65. Litton and the Putative Class Members sustained damages arising out of Preferred Engineering's illegal and uniform employment policy.

## CAUSES OF ACTION

66. By failing to pay Litton and the Putative Class Members overtime at one-and-one-half times their regular rates, Preferred Engineering violated the FLSA's overtime provisions.

67. Preferred Engineering owes Litton and the Putative Class Members overtime pay at the proper overtime rate.

68. Because Preferred Engineering knew, or showed reckless disregard for whether, its pay practices violated the FLSA, Preferred Engineering owes these wages for at least the past three years.

69. Preferred Engineering is liable to Litton and the Putative Class Members for an amount equal to all unpaid overtime wages as liquidated damages.

70. Litton and the Putative Class Members are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

71. Carroll retaliated against Litton because he complained about Preferred Engineering's illegal straight time for overtime scheme. That is a violation of 29 U.S.C. § 215(a)(3).

## JURY DEMAND

72. Litton demands a Jury trial.

## PRAYER

73. Litton prays for relief as follows:

    a. An order allowing this action to proceed as a collective action under the FLSA and directing notice to the Putative Class Members;

    b. A judgment finding Preferred Engineering and Carroll liable to Litton and the Putative Class Members for unpaid overtime and an equal amount as liquidated damages;

    c. A judgment finding Preferred Engineering and Carrol liable to Litton for Litton's lost wages resulting from his unlawful termination and an equal amount as liquidated damages, plus damages for mental anguish and punitive damages;

    d. An order awarding attorneys' fees, costs, expenses, and judgment interest; and

  e. An award of such other and further relief as may be necessary and appropriate.

        Respectfully submitted,

        STURM LAW, PLLC

        */s/ Charles A. Sturm*
        CHARLES A. STURM
        csturm@sturmlegal.com
        *Attorney in Charge*
        Texas Bar No. 24003020
        Federal Bar No. 21777
        712 Main Street, Suite 900
        Houston, Texas 77002
        (713) 955-1800 [Telephone]
        (713) 955-1078 [Facsimile]

